## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TERRAVIA HOLDINGS, INC., *et al.*, | Case No. 17-11655-CSS |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: September 15, 2017, at 10:00 a.m.** |
| | **Objection Deadline: September 8, 2017, extended to September 12, 2017** |

## UNITED STATES' LIMITED OBJECTION TO DEBTORS' SALE OF SUBSTANTIALLY ALL OF ITS ASSETS AND PROPOSED ASSUMPTION AND ASSIGNMENT OF CERTAIN FEDERAL INTERESTS

The United States objects to the Debtors' sale of substantially all of its assets and to the possible assumption and assignment of certain interests of governmental units.  [D.E. 12 and 148]. In support of its limited objection, the United States respectfully represents:

### Background

1.      On August 2, 2017, ("Petition Date"), Terravia Holdings, Inc., and two of its affiliates (collectively, "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  [D.E. 1].

2.      On August 2, 2017, Debtors filed the Motion of Debtors for Entry of Orders (i)(a) Approving Bidding Procedures for Sale of Debtors' Assets, (b) Approving Stalking Horse Bid Protections, (c) Scheduling Auction for, and Hearing to Approve Sale of Debtors' Assets, (d) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (e) Approving Assumption and Assignment Procedures and (f) Granting Related Relief and (ii)(a) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (b) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases (c)

Approving the Consent and Settlement Agreement and (d) Granting Related Relief ("Sale Motion"). [D.E. 12]. On August 22, 2017, the Court entered an Order (i) Approving Bidding Procedures for Sale of Debtors' Assets, (ii) Approving Stalking Horse Bid Protections, (iii) Scheduling Auction for, and Hearing to Approve, Sale of Debtors' Assets, (iv) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (v) Approving Assumption and Assignment Procedures and (iv) Granting Related Relief ("Bidding Procedures Order"). [D.E. 143].

3.      Pursuant to the Bidding Procedures Order, the Debtors were to file an Assumed Contracts Schedule that specified the contracts and real property leases that may be assumed and assigned in connection with the sale of the Debtors' assets ("Proposed Contracts") and the proposed cure cost with respect to each of the Proposed Contracts. On August 30, 2017, the United States Attorney's Office for the District of Delaware received a Notice of Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amount ("Notice"). [D.E. 147]. The Notice did not specifically list the Proposed Contracts but informed recipients that they had been identified as a counterparty to a Proposed Contract and should review the Assumed Contracts Schedule.

4.      The Assumed Contracts Schedule lists at least twenty-five different federal interests designated by the Debtors as Proposed Contracts ("Federal Proposed Contracts"). The Federal Proposed Contracts are held by various components of the Department of Defense, the Department of Energy, the Environmental Protection Agency and the Department of Agriculture. Every single one of the Federal Proposed Contracts is listed as having a zero cure amount.

5.      The hearing on the Sale Motion is scheduled for September 15, 2017, which is thirty-one business days after the Petition. Only eight business days have elapsed since the service

of the Notice on the U.S. Attorney's Office for the District of Delaware.  The United States is diligently researching the Federal Proposed Contracts but does not believe it can identify and review all of the Federal Proposed Contracts, much less adequately protect the interests of the United States, by the Sale Hearing.

6.      The proposed Order (A) Approving Sale Of Debtors' Assets Free And Clear Of Liens, Claims, Interests And Encumbrances, (B) Authorizing Assumption And Assignment Of Executory Contracts And Unexpired Leases, (C) Approving The Consent And Settlement Agreement And (D) Granting Related Relief, purports to transfer all property to the purchaser free and clear of any environmental obligations, and seeks to enjoin the United States [and any State or Local governmental entity] from enforcing any environmental laws with respect to property purchased by the buyer. [D.E. 12, at ¶¶ 8-9, p. 202]

7.      The United States files this objection to preserve its rights with respect to the Federal Proposed Contracts.

<u>**Argument**</u>

8.      The Bankruptcy Code precludes a debtor from assuming and assigning an executory contract when "applicable law excuses a party, other than the debtor, to such contract… from accepting performance from . . . an entity other than the debtor or the debtor in possession" without the non-debtor's consent.  11 U.S.C. § 365(c)(1)(A).

9.      Under the Anti-Assignment Act, a "party to whom the Federal Government gives a contract or order may not transfer the contract or order, or any interest in the contract or order, to another party."  41 U.S.C. § 6305.  The Court of Appeals for the Third Circuit has held that the Anti-Assignment Act thereby precludes a debtor from assuming a contract with the United States under section 365(c)(1) unless the United States consents to such assumption. *In re West*

3

*Elecs.*, 852 F.2d 79, 83 (3d Cir. 1988) ("assignment of a contract calling for the production of military equipment is precisely what Congress intended to prevent when it prohibited assignments"); *In re Physiotherapy Holdings, Inc.*, 538 B.R. 225, 231 (D. Del. July 13, 2015) ("[I]f non-bankruptcy law prohibits the assignment of the executory contract, then the trustee or debtor-in-possession may not assume that contract.") (citing *In re West Elecs.*). Thus, applying the Anti-Assignment Act and the controlling law described in *In re West Elecs.*, the Debtors here may not assume or assign any of the Proposed Federal Contracts without the United States' consent.

10.     The United States objects to the transference or operation by any party of or under, respectively, any license, permit, registration, approval or governmental authorization with respect to the Debtors' assets unless and until the Debtors and any purchaser have complied with all applicable non-bankruptcy laws.

11.     The United States therefore must object to the Debtors' motion and the proposed Sale Order to the extent that it fails to preserve the purchaser's obligations to comply with applicable law as the post-acquisition owner or operator of property.

12.     It is well-established that anyone who owns or operates property acquired from a debtor must comply with environmental law.  No one is entitled to ignore hazards or disregard laws that protect the public and the environment.  *See, e.g.*, *Ohio v. Kovacs*, 469 U.S. 274, 285 (1985) ("[A]nyone in possession of [a] site . . . must comply with . . . environmental laws . . . Plainly that person . . . may not maintain a nuisance, pollute the waters . . . [,] or refuse to remove the source of such conditions."); *In re General Motors Corp.*, 407 B.R. 463, 508 (S.D.N.Y. 2009) (a free and clear purchaser "would have to comply with its environmental responsibilities starting with the day it got the property, and if the property required remediation as of that time, any such

remediation would be the buyer's responsibility") (Gerber, J.).; *cf. In re CMC Heartland Partners*, 966 F.2d 1143 (7th Cir. 1992) (a reorganized debtor that owns property that was contaminated prior to confirmation is liable to EPA as the present owner of the property).

13.    A purchaser is subject to the same compliance obligations as all other owners of property.  The law does not put the purchaser in a privileged position, by freeing it from obligations with which all other owners must comply.  If the purchaser could contend that it is somehow exempt from obligations that apply to all other owners, the public would be placed at risk.  The purchaser cannot evade its environmental obligations, including with respect to hazards that exist even at the outset of its ownership.  See General Motors, 407 B.R. at 508.

14.    Section 363(f) of the Bankruptcy Code, 11 U.S.C. § 363(f), does not allow purchasers to acquire debtor property free and clear of the obligation to comply with environmental law.  Rather, section 363(f) permits property to be sold free and clear of an entity's "interest in such property" only if at least one of the following five conditions is satisfied:

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

*11 U.S.C. § 363(f).*

15.     None of these conditions is satisfied with respect to compliance obligations of an owner under environmental law.  The United States does not consent to a transfer free and clear of such obligations (condition 2), the obligations are not a lien (condition 3), and the obligations of owners under environmental law are not in dispute (condition 4).   Similarly, "applicable nonbankruptcy law" (condition 1) does not permit a sale free and clear of an owner's obligations under environmental law.  Finally, the United States cannot be "compelled . . . to accept a money satisfaction" (condition 5) in lieu of the purchaser's compliance with environmental law.   No provision of environmental law allows an owner to force the government to accept money instead of taking action to protect the public.  Likewise, bankruptcy law does not require the government to elect a monetary remedy over compliance.  *See In re Mark IV Indus., Inc.*, 438 B.R. 46, 470 (Bankr. S.D.N.Y. 2010), aff'd, 459 B.R. 173, 186 (S.D.N.Y. 2011) (the Bankruptcy Code does not require a governmental agency entitled to an equitable remedy to select a suboptimal remedy of money damages, citing In re Davis, 3 F.3d 113, 116 (5th Cir. 1993)); *see also Gouveia v. Tazbir*, 37 F.3d 295, 299 (7th Cir. 1994) (a debtor could not force neighboring landowners to accept money in lieu of equitable relief).  In sum, bankruptcy law cannot be used to place a buyer in a position above the law, leaving the public at risk without the protection of health and safety requirements.  *See, e.g., Zerand-Bernal, Inc. v. Cox*, 23 F.3d 159, 163 (7th Cir. 1994) ("[N]o one believes . . . that a bankruptcy court enjoys a blanket power to enjoin all future lawsuits against a buyer at a bankruptcy sale [or] . . . immunize such buyer from all state and federal laws that might reduce the value of the assets bought from the bankrupt.").

16.     Thus, for example, if the purchaser owns or operates a contaminated facility, it must protect the public from hazards as required by law – regardless of whether the hazardous conditions derive in whole or part from actions of Debtors.  And, if the purchaser owns or operates

equipment or a facility that has a defective condition, it is responsible to prevent and may have liability for the consequences of, for example, an explosion or release, notwithstanding that the explosion or release may have derived in whole or part from a defective condition caused prior to purchase. The Debtors and purchaser should not be asking this Court to countenance exposing the public to these kinds of hazards and risks.

17.    The United States also objects to the Motion to the extent that it negatively affects its appeal rights. The Debtors are requesting that the Court shorten the time for appeal afforded by the federal bankruptcy rules. Pursuant to Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure, unless otherwise ordered by the Court, there is an automatic fourteen-day stay imposed from the date of entry of the order. Under the Debtors' proposed scheme, if the United States is unable to immediately obtain a hearing before the appropriate Court to seek a stay, its appeal may be contended to be moot. Particularly in light of the fact that the appellant in this case would be a government agency, with a chain of command to be consulted, this unilateral ability of the Debtors and the purchaser to truncate the stay period would be unfair and prejudicial to the government.

## Conclusion

For the foregoing reasons, the United States respectfully requests that the Court deny the relief sought in the Sale Motion.

Dated: September 12, 2017                    Respectfully submitted,

                                                      DAVID C. WEISS
                                                      Acting United States Attorney

                                                      */s/ Ellen W. Slights*
                                                      ELLEN W. SLIGHTS (DE Bar No. 2782)
                                                      Assistant United States Attorney